UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | |
|---|---|
| ENRIQUE IBARRA §<br>    Plaintiff §<br> §<br>v. §<br> §<br>MICHAEL J. ASTRUE §<br>COMMISSIONER OF §<br>SOCIAL SECURITY §<br>    Defendant § | CIVIL ACTION NUMBER<br>M-04-158 |

## MEMORANDUM OPINION

Plaintiff Enrique Ibarra filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of the Social Security Administration's (Commissioner's) denial of Plaintiff's application for Supplemental Security Income (SSI) under section 1614(a)(3)(A) of Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Docket No. 18.) Pending before the Court are the parties' cross-motions for summary judgment. (Docket Nos. 14 (Plaintiff), 23 (Defendant).)

Plaintiff claims to be disabled as a result of back and wrist problems. In reviewing the Commissioner's denial of benefits, a federal court may not re-weigh the evidence or substitute its judgment for that of the Commissioner's; rather, a court's review is limited to whether the Commissioner applied the proper legal standards and whether the decision is supported by substantial evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). After carefully considering the record in light of the deferential standard of review that applies, and for the reasons discussed below, the Court finds that the Commissioner's decision is not supported by substantial evidence. In particular, the record does not support the finding that Plaintiff's past work as a

dishwasher was only light work "as performed" by Plaintiff. Summary judgment will be granted in favor of Plaintiff, and this case will be remanded to the Commissioner for further action.

## I. BACKGROUND[1]

Plaintiff filed an application for SSI on March 22, 2001, alleging that he became unable to work since that date due to degenerative joint disease of the lumbosacral spine and a history of joint inflammation. (Tr. 15–16.) Plaintiff's application was denied initially and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on August 22, 2003 in McAllen, Texas. (Tr. 167–75.) Following the hearing, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and not entitled to any period of SSI payments. (Tr. 14–18.) Plaintiff's request for review of the ALJ's decision by the Appeals Council was later denied. (Tr. 5–8.)

At the time of the hearing, Plaintiff was 68 years old. (Tr. 170.) He does not speak, read, or write English, and he testified at the hearing with the assistance of an interpreter. His past work experience includes employment as a dishwasher, stocker, and Mexican customs broker. (Tr. 63.)

### A. The Medical Evidence[2]

The medical record in this case is fairly brief and includes various medical problems seemingly unrelated to the impairments on which Plaintiff's SSI application is based – degenerative joint disease and joint inflamation. There are medical records regarding a renal/scrotal/prostate

---

[1] The Commissioner has filed a transcript of the record of the administrative proceedings, which will be cited herein as "Tr."

[2] Because the Court must "scrutinize" the record to determine whether the ALJ's decision is supported by substantial evidence, the medical evidence will be summarized in some detail. *See Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

ultrasound and exam from February 2001, which revealed normal renal function, prostate hypertrophy (enlargement), and left testicular atrophy. (Tr. 118.) Plaintiff also reported pains in his abdomen, groin, and testicular area in June and July 2001. (Tr. 109–10.) Dr. Nicolas Hernandez Garcia indicated in June 2001 that Plaintiff suffered from hydrocele[3] and that he could sit, stand, and move though it caused him pain to do so. (Tr. 113.) A July 2001 treating source indicated that Plaintiff suffered from arthritis. (Tr. 111.)

Plaintiff had an internal medicine consultative examination by Dr. Amar V. Bagepalli on August 6, 2001. (Tr. 129–34.) Plaintiff's blood pressure was low, and he complained that he had suffered from right wrist pain and stiffness for the previous five years. The majority of Plaintiff's systems were normal. Examination of Plaintiff's wrists did not reveal any subluxations (dislocations) or deformity. Dr. Bagepalli noted that Plaintiff had difficulty walking due to his lumbar pain and observed that Plaintiff had difficulty climbing onto the examination table. X-rays of Plaintiff's spine revealed osteoarthritic changes throughout Plaintiff's lumbar spine with anterior osteophyte formation. (Tr. 132.) No abnormalities were present in X-rays of the right hand. (*Id.*) Dr. Bagepalli's final assessment was that Plaintiff suffers from wrist pain/stiffness, osteoarthritis of the spine, and hydrocele. (Tr. 131.) Unfortunately, Dr. Bagepalli did not offer any opinion or assessment on whether and to what extent these conditions limited Plaintiff's ability to perform work-related activities.

In September 2001, a state agency physician, Dr. Scott Spoor, completed a Physical Residual Capacity Assessment form. (Tr. 135–42.) Dr. Spoor's "assessment" consisted of checking a box

---

[3] A fluid-filled sac that surrounds a testicle causing scrotal swelling. *See* STEDMAN'S MEDICAL DICTIONARY 839 (27th ed. 2000).

on the form indicating that there was no treating or examining source statement regarding Plaintiff's physical limitations on file at the time of his review. He thus concluded – apparently based on the absence of a medical source statement – that the alleged limitations were not supported by medically objective evidence. (Tr. 140.)

Dr. Xavier Grimaldo Rodriguez reported in October 2001 that he had been treating Plaintiff in Mexico with anti-rheumatic and uric medications for more than six months based on a diagnosis of rheumatoid arthritis. (Tr. 150.) Dr. Grimaldo indicated that Plaintiff could not hold items of any weight, including cups of coffee, as a result of his arthritis. (*Id.*) It is unclear whether this was Dr. Grimaldo's medical opinion concerning Plaintiff's functional limitations or whether this was what Plaintiff reported to the doctor about his condition. There is no evidence in the record clarifying Dr. Grimaldo's assessment of Plaintiff's functional capacity.

Plaintiff visited the Price Village Family Medical Clinic in Brownsville, Texas on May 23, 2002, complaining of arthritis pain in his hands and feet. (Tr. 155.) Plaintiff was diagnosed with fibromyalgia[4] and hydrocele at this appointment. Plaintiff returned in August 2002 complaining of pain in his right hip, left foot, and throbbing in both hands with tremors. (*Id.*) Here again, these medical records provide no assessment of Plaintiff's functional capacity.

There is also a July 2003 record from Dr. Roberto Ortiz Arriaga indicating that Plaintiff had been consulting with Dr. Ortiz since May 2003 because of pain and inflamation of the joints in Plaintiff's hands and right foot. (Tr. 161–162.) Dr. Ortiz's medical record likewise does not include

---

[4] Fibromyalgia is "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause." STEDMAN'S MEDICAL DICTIONARY 671 (27th ed. 2000).

any medical opinion or assessment about the effect (if any) of these conditions on Plaintiff's ability to perform work-related activities.

**B.     The Evidentiary Hearing**

Plaintiff was represented by counsel at the hearing held on August 22, 2003. Plaintiff was the sole witness. (Tr. 168–75).

Plaintiff stated that he was 68 years old, that he became a lawful permanent U.S. resident in 1994, and that he could not speak, read, or write English. He testified that his major health problem was pain and limited movement in his right hand, left foot, and hips. Plaintiff explained that his fingers were doubled-down with arthritis, his toes spread out making it difficult to walk, and the pain in his hips also made it difficult to walk.

Plaintiff stated that the pain he felt was very bad and that he did not have any medicine to take at the time. He testified that he could not kneel or stand for very long periods of time. He also indicated that he could not walk very much.

He stated that he was seeing a doctor in Mexico at the time because he could not afford to see the specialist he had been sent to in the United States. He indicated that he had not worked since 1998, could not drive a car, and could not walk more than ten or fifteen meters.

He testified that he last worked as a stocker for a Target store in Las Vegas. He stated that the job did not involve heavy lifting because he could not lift heavy objects. Prior to that he had worked as a dishwasher in a Las Vegas casino. The ALJ did not ask Plaintiff to elaborate on the nature of his work as a dishwasher. Plaintiff merely agreed with the ALJ's description of this job as requiring Plaintiff to work standing up. (Tr. 173–74.)

C.   **The ALJ's Decision** (Tr. 14–18)

In making his decision, the ALJ relied on the testimony that was presented at the August 2003 hearing and the other medical evidence in the record. The ALJ recited and then applied the five-step method for evaluating disability claims.[5]

The ALJ first noted that there was no evidence that Plaintiff had engaged in substantial gainful activity since making his claim. This finding allowed the ALJ to move to the second step of the evaluation, which is whether Plaintiff had an impairment or combination of impairments that were "severe" within the meaning of the Social Security Regulations. 20 C.F.R. § 416.920(c). The ALJ concluded that Plaintiff suffered from two severe impairments: degenerative joint disease of the lumbosacral spine and a history of joint inflamation.

At the third step, the ALJ concluded that Plaintiff's impairments were not severe enough, either singly or in combination, to meet or medically equal one of the impairments in the Social Security listings. This finding necessitated the step-four determination of Plaintiff's residual functional capacity (RFC) to perform the requirements of his past work. The ALJ recited Plaintiff's testimony that his right hand and back problems limited his ability to move his fingers, spend much time on his feet, and walk more than 15 meters. But the ALJ nevertheless concluded that the evidence of record failed to support a finding that Plaintiff's conditions prevent him from performing at least light-type work.

The ALJ acknowledged that there were medical records indicating that Plaintiff suffered from osteoarthritis of the spine and wrist stiffness; however, the ALJ found that X-rays showed only minor

---

[5] The five-step process is further explained later in this report in the Standard of Review section.

osteoarthritic changes and no changes in Plaintiff's hand. The ALJ concluded that the record failed to support the severity of limitations claimed by Plaintiff and found that Plaintiff could perform prolonged walking and standing as well as the lifting and carrying required by light-type work. As the ALJ noted, light work requires the ability to: carry up to twenty pounds occasionally and ten pounds frequently; stand or walk for six hours in an eight-hour workday; sit with normal breaks for six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl.

Based on this RFC determination, the ALJ ruled that Plaintiff could return to his work as a dishwasher as Plaintiff had performed it, which also compelled the conclusion that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time.

## II. ANALYSIS

**A.    Standard of Review**

To qualify for SSI under the Social Security Act (the "Act"), Plaintiff bears the burden of proving that he is disabled.[6] The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 1382c(a)(3)(D).

---

[6] Title II of the Act provides for federal Disability Insurance Benefits for the disabled, while Title XVI provides for SSI. "The relevant law and regulations governing the determination of disability under a claim for Disability Insurance Benefits are identical to those governing the determination under a claim for [SSI]." *Davis v. Heckler*, 759 F.3d 432, 435 n.1 (5th Cir. 1985).

To determine whether a claimant is disabled within the meaning of the Act, the Commissioner applies the following five-step inquiry:

(1) whether the claimant is currently working in substantial gainful employment;

(2) whether the claimant suffers from a severe impairment;

(3) whether the claimant's severe impairment is sufficient under the pertinent regulations to support a finding of disability;

(4) whether the claimant is capable of returning to his past relevant work; and, if not,

(5) whether the impairment prevents the claimant from performing certain other types of employment.

*See* 20 C.F.R. § 416.920.

A finding that a claimant is disabled or not disabled at any point in the five-step inquiry is conclusive and terminates the analysis. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). At steps one through four, the burden of proof rests upon the claimant to show that she is disabled. If the claimant satisfies this responsibility, the burden then shifts to the Commissioner at step five of the process to show that there is other gainful employment that the claimant is capable of performing despite her existing impairments. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). In this case, the ALJ never reached step five because he concluded at step four that Plaintiff was able to perform work that he had done in the past. Thus, Plaintiff had the burden of proof to show that he was disabled.

A federal court's review of the Commissioner's final decision is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Id.* Substantial evidence is such relevant evidence

as a reasonable mind might accept to support a conclusion. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Evidentiary conflicts, however, are for the Commissioner to resolve, not the courts. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *See Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). In applying this deferential standard, however, the Court is not a "rubber stamp" for the Commissioner's decision, particularly given the importance of the benefits in question. *Alejandro v. Barnhart*, 291 F.Supp.2d 497, 500 (S.D.Tex. 2003).

**B.     Issues Presented**

In moving for summary judgment, Plaintiff asserts a myriad of arguments and groups the arguments into errors of law and fact-finding errors. First, Plaintiff argues that the ALJ made the following errors of law: (1) failing to consider a combination of Plaintiff's physical and mental impairments in determining whether Plaintiff equaled a listing; (2) failing to utilize a medical expert witness in the RFC assessment; (3) failing to recontact Plaintiff's treating medical provider as required under 20 C.F.R. § 404.1512(e); (4) discounting the medical opinions of Plaintiff's treating physicians; (5) failing to fully develop the record; and (6) discounting Plaintiff's testimony and finding him not credible. Second, Plaintiff asserts the following fact-finding errors: (7) failing to properly assess Plaintiff's allegations of pain; (8) finding that Plaintiff could perform light work and his previous work as dishwasher; and (9) finding that dishwashing is a light work occupation.

The analysis here will start with the ALJ's finding that Plaintiff retains the RFC to return to

9

his prior work as a dishwasher (issues 8 and 9). Because this critical finding is not supported by substantial evidence (as explained below), it is unnecessary to fully address all nine of the issues raised by Plaintiff.

## C.     Step Four RFC Determination

The ALJ is responsible for determining an applicant's RFC. 20 C.F.R. § 404.1546. In this case, the ALJ determined that Plaintiff retained the RFC to perform light work, which requires the ability to sit up to six hours, stand up to six hours in an eight-hour workday, and lift up to ten pounds frequently and twenty pounds occasionally. 20 C.F.R. § 404.1567(b); SSR 83-10. The ALJ further found that Plaintiff's previous work as a dishwasher "as performed" constituted light work, which compelled the conclusion that Plaintiff was not disabled from returning to that prior work. Plaintiff has challenged both the ALJ's finding that he retained the RFC for light work (issue 8) and the ALJ's conclusion that Plaintiff's prior work as a dishwasher was light work as performed (issue 9). The latter issue will be addressed first.

### 1.     Classification of Plaintiff's Work as a Dishwasher

"In evaluating a claimant's ability to perform 'past relevant' work, the ALJ is obliged by the regulations to review the ... physical and mental demands of the work [the claimant has] done in the past." *Abshire v. Bowen*, 848 F.2d 638, 641 (5th Cir. 1988). Here, the ALJ appears to have determined that Plaintiff's previous work as a dishwasher was light work based solely on Plaintiff's description of his previous work in the Work History Report form dated June 11, 2001. (Tr. 17, 65.) In that description, Plaintiff stated that he would stand/walk for eight hours while washing and putting away dishes. (*Id.*) Plaintiff also indicated (by checking a box) that the heaviest weight he lifted was ten pounds and that he frequently lifted ten pounds. (*Id.*)

The ALJ did not comment on or cite to the only other evidence in the record on the nature of Plaintiff's past work as a dishwasher, which was a much more detailed written description of that work. (Tr. 151.) In that statement, Plaintiff explained that he had washed dishes at a casino kitchen and that, as part of that work, he was required to lift thirty-pound rubber floor coverings, thirty to sixty-pound crates of dishes, thirty to forty-pound ice containers, and fifty to sixty-pound crates of fruits and vegetables.[7] Although this detailed description of the job's lifting requirements was materially different from that reflected by Plaintiff's Work History Report form (based on the boxes he checked), the ALJ did not clarify this issue at the hearing (or otherwise). In fact, the ALJ's only reference to this prior work at the hearing was to confirm that Plaintiff had worked "standing up" washing dishes. (Tr. 173-74.)

Because the standing requirement for light work is *up to six hours per day* and the only evidence in the record is that Plaintiff's work as a dishwasher required him to stand *eight hours per day*, the ALJ's finding that Plaintiff's capacity for light work permitted him to return to his past work as a dishwasher "as performed" by Plaintiff is not supported by substantial evidence in the record.[8]

---

[7] It is not difficult to imagine that Plaintiff's work in a busy casino kitchen would involve this level of physical exertion.

[8] At step four of the disability analysis, a claimant is not disabled if he retains the RFC to do his past work *either* as actually performed *or* as generally performed in the national economy. *See Jones v. Bowen*, 829 F.2d 1019, 1022 n.2 (5th Cir. 1990). Here, the ALJ found that Plaintiff retained the capacity to do his past dishwasher job "as performed." (Tr. 17.) The ALJ did not suggest that Plaintiff retained the capacity to do such work as generally performed in the national economy, perhaps because the occupation of dishwasher is not in the Dictionary of Occupational Titles (DOT). However, it is noteworthy that the occupation of "washer-any industry" (DOT 599.687-030) is classified as medium work, which is beyond Plaintiff's RFC for light work as found by the ALJ. The occupation of "kitchen helper" (DOT 318.687-010), which includes any number of kitchen activities including those described by Plaintiff, is also classified as medium work.

Although this alone justifies remand to the Commissioner, it should be noted that it also appears doubtful from the record that Plaintiff's past work as a dishwasher fell within the lifting requirements for light work, which is limited to lifting up to ten pounds frequently and twenty pounds occasionally. *See* 20 C.F.R. § 404.1567(b); SSR 83-10. Plaintiff's written statement of the actual lifting requirements for that job place it well above the light work category. On remand, the Commissioner must make clear factual findings on the issue of the demands of Plaintiff's past work. *See Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994).

### 2. Light Work RFC Determination/Duty to Develop the Record

Plaintiff also challenges the ALJ's determination that Plaintiff retained the RFC for light work (issue 8) and contends that the ALJ failed to properly develop the record (issue 5). The ALJ found that Plaintiff suffered from two severe impairments: degenerative joint disease of the lumbosacral spine and joint inflamation (arthritis). After summarizing the limited medical evidence concerning those impairments, the ALJ concluded that "it is apparent" that Plaintiff can perform the walking, standing, lifting, and carrying requirements for light-type work. (Tr. 17.) Unfortunately, it is less than apparent from the ALJ's decision and the record that there is substantial evidence to support this conclusion. This absence of evidentiary support calls into question whether the ALJ fulfilled his duty to develop the record.

The ALJ has a duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. § 404.1512(d), (e). Generally speaking, this means that the ALJ should not reject a treating physician's opinion without first recontacting the physician to attempt to fill any gaps in the record. *See Newton v. Apfel*, 209 F.3d 448, 457-58 (5th Cir. 2000). Similarly, in the absence of a medical source statement

describing the applicant's work-related limitations, the ALJ should "usually" request such a statement. *Ripley*, 67 F.3d at 557. But the decision to order a medical source statement or to obtain other additional evidence is discretionary. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). The critical question is "whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

The problem here is that the medical evidence – which is rather limited – does not include any treating or examining medical opinions supporting the ALJ's determination that Plaintiff retained the RFC for light work. In fact, while the record includes some raw medical data in the form of medical records of Plaintiff's doctor visits, there are no medical opinions at all that describe the nature and extent of any functional limitations arising from Plaintiff's medical conditions. For example, Dr. Bagepalli found from his consultative examination that Plaintiff suffered from wrist pain, osteoarthritis of the spine, and hydrocele, but he did not provide any opinion or assessment on what limitations (if any) such conditions would impose on Plaintiff's ability to perform work-related functions. (Tr. 132.) One possible exception is a record from one of Plaintiff's treating physicians, Dr. Grimaldo, which indicates that Plaintiff could not hold items of any weight, including a cup of coffee. (Tr. 150.) Although it is unclear if this notation represented Dr. Grimaldo's opinion based on Plaintiff's medical condition or if he was merely repeating what Plaintiff told him, such an inability to hold any weight would be inconsistent with the conclusion that Plaintiff can do light work (which requires the ability to lift ten pounds frequently).

In other words, while the record includes medical evidence suggesting that Plaintiff suffered from osteoarthritis in his spine and pain in his joints, "the record does not clearly establish ... the effect [Plaintiff's] condition had on his ability to work." *Ripley*, 67 F.3d at 557. In such

circumstances, the ALJ should have taken steps to further develop the record. Moreover, because the record is otherwise devoid of medical opinion on Plaintiff's functional limitations, it appears that the ALJ based his RFC determination on his own evaluation of the medical data. This he was not permitted to do. "The ALJ is not at liberty to make a medical judgment regarding the ability or disability of a claimant to engage in gainful activity, where such inference is not warranted by clinical findings." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (citing *Spencer v. Schweiker*, 678 F.2d 42, 45 (5th Cir. 1982)).

On remand, the Commissioner shall take appropriate steps to sufficiently develop the record from which a proper RFC determination can be made.[9]

**D.    Other Issues**

Plaintiff argues that the ALJ failed to properly assess his allegations of pain (issue 7). Whether pain is disabling is an issue for the ALJ, and it is within his discretion to determine the disabling nature of a claimant's pain. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The determination whether a claimant is able to work despite some pain is within the province of the ALJ and should be upheld if supported by substantial evidence. *Id.* It is unnecessary to analyze this issue further, however, since the Court has found that the ALJ's step-four RFC determination lacks substantial evidence. On remand, a determination as to the disabling effects of Plaintiff's pain should be made on the basis of a properly-developed record.

Plaintiff also asserts that the ALJ committed multiple errors of law in his analysis of Plaintiff's case, including: (1) failing to consider a combination of Plaintiff's physical and mental

---

[9] To the extent that Plaintiff argues that the evidentiary record mandates a finding of disability, the undersigned disagrees. The record contains at best limited medical evidence supporting a finding of disability.

impairments in determining whether Plaintiff equaled a listing; (2) failing to utilize a medical expert witness in the RFC assessment; (3) failing to recontact Plaintiff's treating medical provider as required under 20 C.F.R. § 404.1512(e); (4) discounting the medical opinions of Plaintiff's treating physicians; (5) failing to fully develop the record; and (6) discounting Plaintiff's testimony and in finding him not credible.

Plaintiff's first issue challenges the ALJ's step three determination by arguing that the ALJ failed to consider the combination of Plaintiff's physical and mental impairments in determining whether Plaintiff had an impairment that equaled a Social Security listing. The Supreme Court has held that an individual seeking to show disability pursuant to the listings must show that his impairment meets *all* of the specified medical criteria of the particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* Here, Plaintiff does not identify what particular listing he feels his impairments would medically equal and does not produce evidence showing that his impairments meet all the requirements of a listing. Thus, Plaintiff has not shown that the ALJ erred in finding that Plaintiff's impairments did not meet a listing.

Plaintiff's remaining issues (2-6) need not be addressed further since this case will be remanded for reconsideration of Plaintiff's RFC and further development of the record. In ordering that Plaintiff's SSI claim be remanded, the undersigned expresses no opinion on the ultimate issue of disability. That is a decision left to the Commissioner on remand after the record is properly developed.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Docket No. 14) is hereby GRANTED to the extent that his claim for SSI disability benefits will be remanded to the Commissioner for further action consistent with this ruling. Defendant's Motion for Summary Judgment (Docket No. 23) is DENIED. A final judgment ordering remand will be entered by separate order.

DONE at McAllen, Texas on June 22, 2007.

_____
Peter E. Ormsby
UNITED STATES MAGISTRATE JUDGE